UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CORTEZ MARTELL GREEN,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

_____/

Case No. 1:19-cv-996

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Cortez Martell Green is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On July 11, 2016, Petitioner pleaded guilty in the Wayne County Circuit Court to assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84, discharge of a weapon in or at a building causing injury, in violation of Mich. Comp. Laws § 750.234b, carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227, and use of a firearm in the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On September 2, 2016, the court sentenced Petitioner to concurrent prison terms of 6 to 10 years for AGBH; 6 years, 7 months to 10 years for discharging a weapon in or at a building;[1] and 2 to 5 years for carrying a

---

[1] The trial court initially sentenced Petitioner to 7 to 10 years for discharge of a weapon in or at a building. The minimum term of that sentence, however, exceeded two-thirds of the maximum term, which is not permitted under Michigan law. *People v. Tanner*, 199 N.W.2d 202, 204-05 (Mich. 1972). The parties stipulated to an amended minimum sentence on that conviction.

concealed weapon. Those sentences were to be served consecutively to a sentence of two years for felony-firearm.

On November 19, 2019, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

> I. The prosecutor's withholding of exculpatory evidence was in violation of duties under the *Brady* rule and as a result, rendered [Petitioner's plea] invalid as being involuntary and unintelligently made.
>
> II. [Petitioner] received ineffective assistance of trial counsel.
>
> III. [Petitioner] received ineffective assistance of appellate counsel when said counsel presented the trial court with a confusing postconviction motion that failed to show why the "character" of [Petitioner's] guilty pleas was unintelligently made due to a lack of information resulting from either a *Brady* violation or ineffective assistance of trial counsel.

(Pet., ECF No. 1, PageID.6-13.) Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are procedurally defaulted or meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.[2] Accordingly, I recommend that the petition be denied.

---

[2] "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Here, the procedural default issue raises more questions than the case on the merits; under that circumstance, the Court may assume without deciding that there was no procedural default or

## Discussion

**I.     Factual allegations**

During February of 2016, Petitioner was charged with seven counts of assault with intent to murder (AWIM), seven counts of AGBH, five counts of discharge of a weapon at a building causing injury, one count of carrying a concealed weapon, and one count of felony-firearm. The charges stemmed from an incident at the Penthouse Lounge, a bar in Detroit, Michigan.

The facts underlying Petitioner's charges were laid out during his preliminary examination on April 20, 2016. (Prelim. Exam. Tr., ECF No. 6-2.) On February 28, 2016, Petitioner became embroiled in an argument with La Tonya King outside the bar. Ms. King believed that Petitioner had groped her while they were in the bar. More than a dozen people were outside the bar as the argument continued. Ms. King reports that Petitioner pulled out a gun and began shooting. She fled into the bar and then out a side door into an alley. She testified that Petitioner came around to the alley and began firing at her there.

Several bar patrons were shot during the fracas. Ms. King (who was grazed by a bullet), her sister (who was not injured), and two men who suffered gunshot wounds testified. Two other gunshot victims failed to show up at the preliminary examination, despite being under subpoena. The court concluded the prosecutor had failed to show probable cause with respect to the charges related to those victims and did not bind Petitioner over on those charges. Additionally, the prosecutor and defense counsel stipulated to the dismissal of charges related to another victim.

---

that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

In addition to the testimony, the prosecutor played video from the bar's surveillance cameras. The officer in charge of the investigation reported that there were four such cameras, but the prosecutor only played the video from one of the cameras. The court viewed the video twice.

The videos are the foundation for Petitioner's habeas challenges. He claims the videos show that he fired in self-defense. He contends the videos make clear that a man in a white hat either showed Petitioner a weapon or brandished it and that Petitioner, fearing for his life, then fired at the man. Petitioner argues that his counsel never received the videos from the prosecutor, which would be a *Brady* violation, or that counsel was ineffective because he did not investigate and view the videos, or that counsel was simply incompetent because counsel advised Petitioner to take the plea despite having video evidence that strongly supported Petitioner's claim of self-defense.

Petitioner entered his plea on July 11, 2016. He was sentenced, consistently with the plea agreement, on September 2, 2016. Petitioner sought the appointment of counsel to pursue an application for leave to appeal. Before filing the application, counsel moved to withdraw the plea based on his claim that counsel either did not know about the video or misadvised Petitioner to take the plea despite the video. (Hr'g Tr., ECF No. 6-7; Hr'g Tr., ECF No. 6-8, Hr'g Tr., ECF No. 6-9.) As part of the proceedings to withdraw the plea, counsel submitted video of the incident that Petitioner's relative had acquired from the internet. (*Id.*)

Videos of the incident are still accessible on the internet now, almost five years later. *See* https://www.youtube.com/watch?v=X_Wg5IEuHXU and https://www.youtube.com/watch?v=FNQcyg4PoDk (visited Jan. 15, 2021). The videos certainly do not rule out the truth of Petitioner's account of the event—that the man in the white hat brandished a gun and Petitioner fired in response. The videos also do not rule out the possibility that Petitioner brandished and fired his

4

gun first.³ It does appear, however, that each man eventually fired in the direction of the other. Moreover, the preliminary examination testimony of the investigating officer indicated that police found many shell casings that were apparently fired from *three* different weapons.

Despite these videos, the trial court rejected Petitioner's motion to withdraw his plea. The court reasoned that, despite Petitioner's protestations to the contrary, the preliminary examination transcript revealed that defense counsel was very aware of the self-defense claim, and the man in the white hat. Those issues very obviously formed the basis for defense counsel's cross-examination of the witnesses at the preliminary examination. Thus, the court reasoned, it could not be said that counsel was unaware of the self-defense claim when he counseled Petitioner to enter his plea.

Counsel's cognizance of the defense is also apparent from events after the preliminary examination. During an April 27, 2016, pretrial conference, counsel informed the trial court:

> [T]hat when Mr. Green supposedly ran towards some individuals that are complaining witnesses, that also ran, the video is clear that the reason why Mr. Green was running in that direction, is a gentleman was shooting at him.
>
> The video, as played at the examination, shows bullets hitting the ground around where Mr. Green was running from.
>
> Moreover, at the time of this incident, there were three different calibers of shell casings found at the scene. Forty-five millimeter, forty millimeter, nine millimeter. So, there was more than one gun at this incident that occurred. And quite frankly, one of the defenses is self-defense. I believe, initially, that the evidence suggests that Mr. Green was not the individual that drew first and fired into a crowd. But that would all be the subject of negotiations and or trial.

---

³ There may be videos in addition to the two referenced above. The prosecutor refers to four cameras. (Prelim. Exam. Tr., ECF No. 6-2, PageID.155-156.) Perhaps one of the views clearly shows that the man in the white hat threatened Petitioner first. For the reasons explained in detail below, however, even that would not make counsel's advice to enter a guilty plea ineffective assistance.

(Pretrial Conf. Tr., ECF No. 6-3, PageID.190-191.) Indeed, counsel requested, and the court approved, hiring an investigator to determine the identity and felony backgrounds of the other shooters. (*Id*., PageID.193.)

Appellate counsel raised the voluntariness of Petitioner's plea anew in Petitioner's application for leave to appeal. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-10, PageID.265.) Counsel also raised an issue regarding the court costs imposed as part of Petitioner's sentence. (*Id*.)

By order entered May 23, 2017, the court of appeals remanded the case to the trial court to establish a factual basis for the court costs imposed but denied leave to appeal in all other respects "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 6-10, PageID.263.) Petitioner did not seek leave to appeal in the Michigan Supreme Court. (Aff. of Larry Royster, ECF No. 6-11.)

On October 27, 2017, Petitioner filed a motion or relief from judgment in the trial court. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=2528931 (visited Jan. 15, 2021). By way of that motion, Petitioner raised the same three issues he raises in his habeas petition: he was denied a fair trial due to the prosecutor withholding evidence, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. (Wayne Cnty. Cir. Ct. Order, ECF No. 6-12, PageID.412.)

The trial court addressed Petitioner's claim of prosecutorial misconduct on the merits. The court concluded that the record showed that the prosecutor had provided the videos to defense counsel. (*Id*.) The court also addressed the merits of Petitioner's claims of ineffective assistance of trial and appellate counsel; however, the court addressed the merits as part of its analysis of whether Petitioner had established good cause for not raising these claims on direct appeal.

Ultimately, the trial court concluded that Petitioner had failed to show that trial counsel was ineffective in advising Petitioner to enter his guilty plea. (*Id.*, PageID.413-415.) Because Petitioner could not show that his trial counsel was ineffective, he also could not show that his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel. (*Id.*)

Petitioner sought leave to appeal the trial court's decision, first to the Michigan Court of Appeals, and then to the Michigan Supreme Court. Those courts denied leave by form orders entered September 11, 2018, and April 2, 2019, respectively. (Mich. Ct. App. Order, ECF No. 6-13, PageID.416; Mich. Order, ECF No. 6-14, PageID.477.) This petition followed.

## II.     AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d

570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

8

court. *See Sumner v. Mata*, 449 U.S. 539, 546-547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. *Brady* violation

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

The preliminary examination transcript includes a statement by the prosecutor that there were four surveillance cameras at the bar. All four were purportedly on the exhibit introduced at the preliminary examination, including the video that Petitioner's relative provided in connection with the motion to withdraw the plea. (Mot. Hr'g Tr., ECF No. 6-9, PageID.252.) The prosecutor represented that she turned the video from all four cameras to defense counsel prior to the hearing. (Prelim. Exam. Tr., ECF No. 6-2, PageID.155-156.) Defense counsel acknowledged that he had "obviously" looked at the video. (*Id*., PageID.155.) Accordingly, the trial court concluded that Petitioner's *Brady* argument was without merit. (Wayne Cnty. Cir. Ct. Op. & Order, ECF No. 6-12, PageID.412.)

The trial court's determination is well-grounded in the record. Petitioner has failed to show that the trial court's conclusion that his claim was meritless is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on this claim.

### IV.     Ineffective assistance of trial counsel

Petitioner anticipates that, perhaps, the prosecutor did provide the videos to defense counsel, because Petitioner offers as an alternative to his *Brady* claim that his counsel was ineffective because he advised Petitioner to plead guilty despite the videos or because counsel did not adequately investigate the self-defense claim even after seeing the videos. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the

judgment.  *Id.* at 691.  The trial court expressly applied the *Strickland* standard when it rejected Petitioner's ineffective assistance of trial counsel claim.

When a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Petitioner's challenge, as presented, fits the *Hill* modification of the *Strickland* test.  Petitioner contends that, if he had only known of the merit of his self-defense arguments—arguments ignored by counsel—he would not have pleaded guilty but would have

11

instead insisted on going to trial. But the only way Petitioner can make his argument fit within *Hill* and *Strickland* is to disregard the facts completely.

Counsel was well-aware of the significance of Petitioner's self-defense claim. It was the focus of counsel's questioning at the preliminary examination and the focus of his investigative efforts before trial. Petitioner was present at the preliminary examination. He was also present when counsel obtained the court's approval to hire an investigator to explore the identities of the other shooters. Counsel was keenly aware of the self-defense claim, and Petitioner knew that counsel was aware. Petitioner argument that counsel failed him in that regard borders on frivolous.

The fact that Petitioner had a viable self-defense claim—as least with regard to the shots fired in front of the bar—does not render counsel's advice to plead guilty professionally unreasonable. That was the point the trial court made: "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing . . . ." (Wayne Cnty. Cir. Ct. Op. & Order, ECF No. 6-12, PageID.415.) The court quoted extensively from *McMann v. Richardson*, 397 U.S. 759 (1970), including the following:

> "[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt?"

(Wayne Cnty. Cir. Ct. Op. & Order, ECF No. 6-12, PageID.415 (quoting *McMann*, 397 U.S. at 769-70).) The trial court had viewed the video of the shooting in front of the bar multiple times when it opined as to the uncertainty of Petitioner's position. There is little question that a jury might have concluded that the prosecutor could not prove that Petitioner did not fire in self-

defense—but a jury might also conclude, beyond a reasonable doubt, that Petitioner did not fire in self-defense. That is the uncertainty to which the court's comments were apparently directed.

Critically, the court expressly relied on clearly established federal law. Petitioner offers nothing to suggest that the court's ultimate conclusion—that counsel's advice in that uncertain environment was competent—was contrary to, or an unreasonable application of, *Strickland* and *Hill*. Moreover, even if Petitioner's claim of self-defense were an iron-clad certainty as to the shots fired in front of the bar, the defense vanishes after Petitioner escapes to the alley, away from the other shooters, and starts firing at Ms. King and her sister again. The prosecutor drove that point home at the preliminary examination. (Prelim. Exam. Tr., ECF No. 6-2, PageID.173-174.)

Put differently, the trial court's determination that Petitioner's trial counsel was not ineffective for advising Petitioner to enter a guilty plea is well-grounded in the record and in clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on that claim.

## V.  Ineffective assistance of appellate counsel

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. But the boundaries of professionally reasonable conduct change somewhat in the appellate context. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259,

13

287-88 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

Petitioner claims that his appellate counsel was ineffective for failing to raise the *Brady* and ineffective assistance of trial counsel claims addressed above.  The trial court concluded that it would have been "fruitless" for appellate counsel to have pursued those claims.  (Wayne Cnty. Cir. Ct. Op. & Order, ECF No. 6-12, PageID.415.)  That determination is neither contrary to, nor an unreasonable application of, *Strickland*.  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Therefore, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits

14

review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated: February 3, 2021                                          /s/ Sally J. Berens
                                                                                      SALLY J. BERENS
                                                                                      U.S. Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).